ORDERED.

Dated: October 15, 2020

*Catherine M<sup>c</sup>Ewen* (signature)
Catherine Peek McEwen
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re:<br>Anthony Frank Maniscalco,<br>    Debtor.<br>_____/<br>NSB Horatio LLC,<br>    Plaintiff.<br>v.<br>Anthony Frank Maniscalco,<br>    Defendant.<br>_____/ | Case No. 8:16-bk-07805-CPM<br>Chapter 7<br><br><br><br>Adv. Proc. No. 8:17-ap-00134-CPM |

**MEMORANDUM OPINION AND ORDER
ON COMPLAINT OBJECTING TO DISCHARGEABILITY
OF DEBT OWED BY DEBTOR AND DEBTOR'S DISCHARGE**

THIS PROCEEDING came on for decision after trial on Count II of the Complaint Objecting to Dischargeability of Debt Owed by Debtor and Debtor's Discharge (Doc. No. 1) filed by creditor NSB Horatio LLC ("NSB"), the Plaintiff, against Anthony Frank Maniscalco, the Defendant and Debtor in the associated bankruptcy case. In Count I of the complaint, NSB sought

a determination under 11 U.S.C. § 523(a)(4) of the dischargeability of its claim. I resolved that count in favor of Mr. Maniscalco by granting his motion for summary judgment (Doc. No. 89). In Count II, NSB objects under 11 U.S.C. § 727(a)(4) to the overall discharge.

<u>Jurisdiction, Burden of Proof, and Standard of Proof</u>

This Court has jurisdiction to both hear and enter judgment in this proceeding under 28 U.S.C. §§ 157 and 1334 and the Order of the United States District Court for the Middle District of Florida dated February 22, 2012, referring all bankruptcy cases and related proceedings to the bankruptcy judges of the district; this is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409. NSB, as a creditor of the Debtor, has standing under 11 U.S.C. § 727(c)(1)[1] to bring its Count II claim.

The burden of proof falls on NSB as the Plaintiff.[2] The quantum of proof required to meet that burden is by a preponderance of the evidence.[3] "[O]nce a plaintiff meets the initial burden, the debtor has the ultimate burden of persuasion. . . . That is, the debtor must bring forth 'enough credible evidence to dissuade the court from exercising its discretion to deny the debtor's discharge based on the evidence presented by the objecting party.'"[4] And objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor in order to advance the policy favoring discharge of an honest debtor's debts.[5]

<u>Elements of § 727(a)(4)</u>

As noted above, the sole remaining claim for me to determine in this proceeding is NSB's objection to discharge under § 727(a)(4)(A). The precise issue is whether I should deny Mr.

---

[1] All statutory references hereafter are to Title 11 of the United States Code.
[2] Fed. R. Bankr. P. 4005.
[3] *Posillico v. Bratcher (In re Bratcher)*, 289 B.R. 205, 217 (Bankr. M.D. 2003) (citation omitted).
[4] *Id*. (citations omitted).
[5] *Id.* (citation omitted).

2

Maniscalco a discharge based on NSB's allegation in Count II of the complaint that he "knowingly and fraudulently misstated the value of his equity interest" in an investment company listed on his schedule of assets.[6]

Under § 727(a)(4)(A), the Court shall deny the debtor a discharge if the debtor 1) made a false oath or account in connection with the bankruptcy case, 2) knowingly and fraudulently, and 3) such false oath or account is material.[7] A false oath may involve a knowingly false statement or a deliberate omission in the debtor's petition or bankruptcy schedules. Actual fraudulent intent is required.[8] In other words, a "false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent."[9] Even so, "a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar the discharge."[10] In addition to establishing fraudulent intent, the plaintiff must establish that the false oath or omission pertains to a material fact.[11] A false oath or claim is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence of disposition of his property."[12] In the case of an omitted asset (which is not the situation here), the fact that the asset ultimately would not benefit the estate does not make the statement immaterial.[13] But in the case

---

[6] *See* Complaint, Doc. No. 1 at ¶ 44.
[7] *The Cadle Company v. Leffingwell (In re Leffingwell)*, 279 B.R. 328, 339 (Bankr. M.D. Fla. 2002) (citations omitted).
[8] *Bauman v. Post (In re Post),* 347 B.R. 104, 112 (Bankr. M.D. Fla. 2006).
[9] *Id*. (citation omitted).
[10] *Id*. (citation omitted).
[11] *Leffingwell,* 279 B.R. at 339 ("Although not specifically contained in the statute, courts have imposed a test of materiality to 'ensure debtors are not denied discharge for inconsequential or technical omissions.'") (citation omitted).
[12] *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984).
[13] *Id*.

of a disclosed but undervalued asset, I am of the view that the materiality of the false statement of value may turn on the relative benefit to the estate.[14]

### The Valuation of (and Ownership Interest in) Maniscalco Enterprises, LLC

Here the asset in question was fully disclosed, not omitted. But in its complaint, NSB questions Mr. Maniscalco's valuation of the asset. The specific asset is Mr. Maniscalco's interest in Maniscalco Enterprises, LLC ("ME, LLC"), a family-owned investment company. On his Schedule A/B, Mr. Maniscalco listed his interest as

> **30% ownership interest in Maniscalco Enterprises, LLC**
> **\*Jointly owned with non-filing spouse as tenancy by the entireties**

and he valued the interest at $148,516.50.[15] Although the complaint itself does not allege a false oath with respect to the statement identifying Mr. Maniscalco's ownership interest as entirety property, some of the testimony and evidence offered by NSB at trial appeared to attack the veracity of that statement. No motion to conform NSB's pleading to the evidence was made, but I nonetheless will address the nature of Mr. Maniscalco's ownership interest in ME, LLC as well as its value.

First, as to the nature of the interest, I find that substantial, compelling evidence supports Schedule A/B's statement that the interest in ME, LLC was held as tenants by the entirety on the date of the petition, September 9, 2016. Mr. Maniscalco and Catherine Maniscalco, his wife, testified as such. I find them to be credible. Further, the ME, LLC operating agreement dated

---

[14] By way of example, in the case of an intentionally undervalued asset that is unquestionably exempt or is of such *de minimus* value that a chapter 7 trustee would not administer the asset, the false oath is more technical than substantive and should not be considered material for purposes of § 727(a)(4). This is not to suggest that any false statement associated with a bankruptcy filing should be condoned, but, rather, on balance, that the denial of a discharge is too drastic a penalty for such an immaterial false statement. *See also* n. 11, *supra*.

[15] *See* NSB Exhibit 4.

December 31, 2005, states the same.[16] NSB failed to prove by a preponderance of the evidence that this agreement does not accurately reflect the interest of Mr. Maniscalco and his wife in ME, LLC or the date upon which that interest arose. NSB also failed to establish any subsequent loss of that interest by Mrs. Maniscalco.

Although NSB pointed to amended federal tax returns that changed prior form K-1s that listed only Mr. Maniscalco as owner to reflect the entirety ownership, the amended K-1s are not persuasive to me regarding the ownership issue. I find that the operating agreement is genuine and that the amended K-1s merely corrected prior inaccuracies regarding Mrs. Maniscalco's interest. In addition, testimony of witnesses Michael McMahon and "Mickey" Jaap, who were involved in correcting the K-1s, and whose testimony I also credit, corroborated Mr. Maniscalco's testimony concerning the corrections. Mr. McMahon is the chief financial officer ("CFO") of MGSI, LLC d/b/a Medical Group Services, Inc., a medical billing company of which Mr. Maniscalco is the chief executive officer. Mr. Jaap is Mr. Maniscalco's accountant. Notably, the same mistake occurred with respect to the other married couples in the Maniscalco family who held interests in ME, LLC.[17] And as Mr. Maniscalco explained, credibly, when asked if any of "his people" ever noticed his interest was in his name only (based on the K-1s), "Well, it wasn't my interest. It was just my K — the K-1 distribution. My interest is documented in the operating agreement."[18] He is correct regarding the source of his ownership interest; a K-1 does not create or change an interest in a limited liability company. While a K-1 may evidence that an interest is held in a particular way, an erroneous K-1 does not amend or override the express terms of the document creating the interest in the first place.

---

[16] *See* NSB Exhibit 15.
[17] This was revealed at trial through live testimony as well as deposition testimony offered and accepted into evidence. *See, e.g.,* NSB Exhibits 12, 13; Trial Transcript, Doc. No. 97, pp. 132-137.
[18] Trial Transcript, Doc. No. 96, p. 253, lines 8-16.

Second, as to the scheduled value of the Maniscalcos' interest in ME, LLC, NSB similarly failed to prove by a preponderance of the evidence that this value is false, let alone a product of knowing and fraudulent intent. In setting the value, Mr. Maniscalco relied on a Balance Sheet dated April 2016, prepared by Mr. McMahon. The Balance Sheet reflects ME, LLC's "Total Liabilities & Equity" at the time as $495,054.73.[19] Thirty percent of that figure equals the scheduled value of $148,516.50. Although the actual figure may have differed on the petition date, there was no showing by NSB whether it did in fact differ and, if it did, whether it was actually much higher. Simply put, NSB presented no credible evidence to establish that the value of the Maniscalcos' interest in ME, LLC was strikingly higher on the petition date than what Schedule A/B shows. Without that critical information, I cannot find that the scheduled value is false. Importantly, later Balance Sheets for ME, LLC dated October 2016 and December 2016 show the "Total Liabilities & Equity" figures declining,[20] a fact that undercuts the argument that Mr. Maniscalco intentionally undervalued his and his wife's interest in ME, LLC.

Rather than offer expert testimony on the value of ME, LLC on the petition date, NSB asserts that the scheduled value is false based on Mr. Maniscalco's testimony at a Rule 2004 examination[21] in which Mr. Maniscalco estimated his and his wife's interest in ME, LLC to have a value of $720,000.00. At trial, the Debtor explained that this figure was based on a post-petition offer made to acquire Lancet Indemnity Risk Retention Group, Inc., a business in which ME, LLC had an indirect financial interest (by virtue of its interest in other companies with a direct interest in the Lancet entity). Mr. Maniscalco testified that there was not even a contract in place until three months after his bankruptcy filing and that the sale transaction never happened. These post-

---

[19] *See* Maniscalco Exhibit 79.
[20] *Id*.
[21] Fed. R. Bankr. P. 2004.

6

petition events (or non-event, in the case of the sale that fell through) are insufficient to meet NSB's burden to establish that the scheduled value of ME, LLC on the petition date is false. Hence, the Rule 2004 examination testimony is not demonstrably at odds with the value stated in the Debtor's schedules.

Having determined that NSB did not meet its initial burden to prove a false statement by Mr. Maniscalco about the value of ME, LLC, I need not address the issue of whether he acted knowingly and fraudulently respecting his valuation. And nor, then, do I even reach the issue of materiality. But I will address each in turn, for argument's sake.

Assuming the value Mr. Maniscalco ascribed to his interest in ME, LLC were false, I find that he did not knowingly and fraudulently misrepresent the value. Credible evidence shows that, with respect to the stated value, Mr. Maniscalco reasonably relied on information he received from the CFO for MGSI, LLC. Specifically, the CFO provided a book value for ME, LLC, and Mr. Maniscalco used this dollar amount to estimate the dollar amount of his and his wife's 30 percent interest. Although there may be better ways to value the underlying assets within an investment company such as ME, LLC, the method selected by the CFO and relied on by Mr. Maniscalco in evaluating the 30 percent interest in ME, LLC is not so unreasonable as to evidence a fraudulent intent.[22]

Finally, even if I had found that Mr. Maniscalco made a false statement knowingly and with fraudulent intent concerning the value of the Maniscalcos' interest in ME, LLC, such statement would not be material under the facts at hand. As discussed above, Mr. Maniscalco and

---

[22] Book value is a recognized asset-based methodology for valuing a private company. *See, e.g.,* Stan Bernstein, Susan H. Seabury, and Jack F. Williams, *Admitting Expert Valuation Evidence Before the U.S. Bankruptcy Courts* 83-84 (American Bankruptcy Institute 2017).

his wife's interest in ME, LLC is held by them as tenants by the entirety, and NSB failed to establish otherwise. I take judicial notice that Mr. Maniscalco listed this asset on his Schedule C as exempt property under § 522(b)(3)(B),[23] and no one objected to this exemption. Consequently, the Maniscalcos' interest in ME, LLC could not be administered by the chapter 7 trustee in Mr. Maniscalco's bankruptcy case for the benefit of creditors. Thus, any misstatement about the value of this interest, even if intentional, would be immaterial.

## Conclusion

Based on the facts of this case as presented at trial, the credibility of the witnesses, and bearing in mind NSB's burden of proof, I find and conclude that NSB failed to prove that Mr. Maniscalco "knowingly and fraudulently misstated the value of his equity interest" in ME, LLC as alleged in Count II of the complaint so as to constitute a false oath or account in connection with his bankruptcy case. In sum, NSB did not establish that Mr. Maniscalco's conduct warrants the drastic penalty of a denial of his discharge under § 727(a)(4). Thus, I will enter a separate judgment in favor of Mr. Maniscalco on both Counts I and II of the complaint. Accordingly, it is

ORDERED:

1. The objection to Mr. Maniscalco's discharge as alleged in Count II is overruled.
2. Given the Court's previous disposition of Count I and the instant disposition of Count II, a final judgment shall be entered in favor of Mr. Maniscalco and against NSB on both counts of the complaint.
3. A separate final judgment will be entered consistent with this order.

Service by CM/ECF only.

---

[23] *See* NSB Exhibit 4.